IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ROLAND JONES, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-05-499 |
| § | |
| APACHE CORPORATION and § | |
| GOM SHELF, LLC, § | |
| § | |
| Defendants. § | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Roland Jones ("Plaintiff") brings this action against Defendants Apache Corporation ("Apache") and GOM Shelf, LLC ("GOM") (collectively "Defendants") for personal injuries allegedly suffered by Plaintiff while he was working on an offshore platform known as Brazos South Addition Block 133A ("Block 133A"). Defendants filed a Motion for Summary Judgment, and Plaintiff timely filed a Response. For the reasons stated below, Defendants' Motion for Summary Judgment is **DENIED**.[1]

**I. Background**

Plaintiff, an employee of Rex Painting, was working as a painter on Block 133A on September 14, 2003. GOM is the owner of Block 133A, and Defendants claim Apache was the manager of Block 133A. On the morning of September 14, 2003, Plaintiff attended a safety meeting that was conducted by Raymond Smith, who is listed on Apache paperwork as being the "Apache Supervisor

---

[1]The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

1

Responsible for the Facility or Injured Person." (Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. A.)  During the safety meeting, the workers were advised that a cable needed to be removed, but, according to Plaintiff, "they never did communicate on what cable." (Jones Dep. at 114:4–8.)  After the meeting, Plaintiff performed some sandblasting work and then donned his gear to begin painting.  He had to cross some scaffold boards to get to his work area, and, while in route, he reached out for a safety cable that had previously been in place.[2]  However, the cable he was reaching for had been removed.  Plaintiff lost his balance, slipped, and fell.  Plaintiff had on a safety harness that was properly hooked up, so he was never fully immersed in the ocean.  Instead, he fell ten feet, jerked up a little, and then hung suspended by the harness, with his legs knee-deep under water. (Jones Dep. at 97.)  Plaintiff alleges that his back was injured when he hit a pipe during his fall, (Jones Dep. at 97–98), and that his hand was severely injured while he was being pulled out of the water (Jones Dep. at 101).

Plaintiff claims that Defendants are responsible for his injuries because they were negligent for either removing the safety line, ordering the safety line be removed, or ordering work to continue despite knowledge of the lack of proper safety equipment.  Plaintiff also claims that his injuries were proximately caused by an unreasonably dangerous condition on the platform and that Defendants were aware of the condition.

**II. Legal Standard**

The Parties do not dispute that the Outer Continental Shelf Lands Act applies. *See* Outer Continental Shelf Land Act (OCSLA), 43 U.S.C. §§ 1331–1356.  Under OCSLA, the law of the adjacent state is applied as surrogate federal law to the extent that the state's law is not in conflict

---

[2]The cable was supposed to serve as a safety mechanism.  The painters could put their hand onto it to help them balance. (Jones Dep. at 94–97.)

with federal law. Because Texas is the state adjacent to Block 133A, OCSLA requires the application of Texas law for torts allegedly occurring on Block 133A. *See* 43 U.S.C. § 1333.

While the Parties agree that Texas law applies, they do not agree on whether Chapter 95 of the Texas Civil Practices and Remedies Code, which sets forth liability requirements for claims brought against a property owner by an employee of a subcontractor, applies. Defendants claim that Chapter 95 applies and that they are entitled to summary judgment under its terms. Plaintiff claims that Chapter 95 does not apply to Apache and that, even if it did, there are issues of fact that preclude summary judgment in favor of either Defendant.

*A. Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1956). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[3] *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g., Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003).

---

[3]However, if the moving party "bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S. Ct. at 2512. Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See id.* at 255, 106 S. Ct. at 2513.

*B. Texas Premises Liability Law*

Defendants' Motion for Summary Judgment is based on their assertion that Chapter 95 of the Texas Civil Practices and Remedies Code precludes recovery against a property owner "for personal injury, death, or property damage to . . . an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property" unless:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. Under Chapter 95, the defendant has the burden of showing that the chapter applies, and the plaintiff has the burden of establishing control and actual knowledge. *See Rueda v. Paschal*, 178 S.W.3d 107, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet. h.).

Chapter 95 was enacted by the Texas Legislature in 1995 as part of a "sweeping tort-reform package." *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.—Houston [14th

Dist.] 2004, pet. denied). The control prong is a codification of the Texas Supreme Court's decision in *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex. 1985), in which the Texas Supreme Court adopted § 414 of the Restatement (Second) of Torts. Section 414 states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414. The Texas Supreme Court, relying on § 414, concluded that a general contractor owes a duty of reasonable care to a subcontractor's employees if the general contractor "exercises some control over a subcontractor's work." *Redinger*, 689 S.W.2d at 418. Since the control prong of Chapter 95 is a codification of *Redinger*, *Redinger* and post-*Redinger* Texas cases are instructive regarding the extent of control the Texas legislature intended as sufficient to overcome the statutory bar on liability imposed by Chapter 95.

*1. Control*

Texas courts have concluded that control by a property owner, as defined in *Redinger* and the Restatement, can be maintained by either contract or actual exercise of control. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001) (citing *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999), and *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999)). Such control "must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner." *Coastal Marine*, 988 S.W.2d at 226. The control exercised or allocated to the property owner must exceed the mere "right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily

5

be followed, or to prescribe alterations and deviations." *Koch Ref.*, 11 S.W.3d at 155.

### 2. Actual Knowledge and Failure to Warn

Under Chapter 95, a property owner cannot be held liable for the plaintiff's injuries unless the plaintiff proves both prongs: control and actual knowledge of the unsafe condition. *See, e.g.*, *Kelly v. LIN Television of Tex. L.P.*, 27 S.W.3d 564, 567 (Tex. App.—Eastland 2000, pet. denied). Chapter 95 increased the burden Texas courts had placed on the plaintiff, as Texas common law only required the plaintiff to prove constructive knowledge. *See Dyall*, 152 S.W.3d at 699 & n.16. Texas courts interpret Chapter 95's "actual knowledge" requirement literally, and neither "negligent ignorance," *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 135 (Tex. App.—Houston [1st Dist.] 2005, no pet. h.), nor "knowledge that an activity is *potentially* dangerous," *Dyall*, 152 S.W.3d at 709 n.18 (emphasis added), are sufficient to satisfy the actual knowledge prong. A defendant who has actual knowledge of a dangerous condition can still merit Chapter 95's protection if the defendant adequately warned the plaintiff of the dangerous condition. *See* TEX. CIV. PRAC. & REM. CODE § 95.003.

### III. Analysis

Defendants assert that Chapter 95 applies to both Apache and GOM, that neither Apache nor GOM exercised control over Plaintiff's work, and that Plaintiff was adequately warned about the unsafe condition. Conversely, Plaintiff claims that Chapter 95 does not apply to Apache and that, even if it did, Apache exercised control over Plaintiff's work, knew about the unsafe condition, and failed to adequately warn Plaintiff about the dangerous condition. First, the Court will discuss the applicability of Chapter 95, then it will examine whether Plaintiff has submitted sufficient evidence of control, knowledge, and failure to warn to survive summary judgment.

*A. The Applicability of Chapter 95*

Plaintiff does not contest the applicability of Chapter 95 to GOM, as GOM is the owner of Block 133A. Plaintiff does, however, claim that Apache is not the property owner and, as such, cannot invoke Chapter 95. Under Texas law, Chapter 95 "applies to property owners and also to their agents who oversee their properties." *Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 203 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Apache contends that it is the manager of Block 133A and, as such, is entitled to the protection Chapter 95 provides for owners of real property. Plaintiff points out that the documentation cited by Apache that allegedly indicates it is the manager of Block 133A does not discuss Apache's status as a "manager." While the Court likewise cannot find any reference to Apache's status in the cited document, all the facts in the instant case—including those discussed by Plaintiff—are consistent with Apache's assertion that it was GOM's agent overseeing Block 133A.

B. *Control*

Defendants vigorously argue that Chapter 95 protects them from liability because they had no control over the "operative detail" of Plaintiff's work. According to Defendants, neither Defendant was telling Mr. Jones "what to do, when to do it, and how to do it."(Defs.' Mot. at 9.) Defendants argue that "the employee must show the contractor 'actually exercised control over the manner in which the independent contractor's work was performed.'" *Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238, 252 (5th Cir. 2005) (quoting *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002)).

Plaintiff does not claim that Defendants controlled the way in which he painted. Instead, Plaintiff contends that Defendants exerted *contractual* control over Plaintiff. Apache and Rex Painting were parties to a Master Services Agreement, and Exhibit D to the Master Services

7

Agreement outlines the Contractor Safety Program, which Plaintiff claims provides the basis of Apache's contractual control over the operational details of his work. (Defs.'s Mot. Ex. D, Ex. D.) The Texas Supreme Court addressed the issue of contractual control via safety regulations extensively in *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356–58 (Tex. 1998). In *Hoechst-Celanese*, the defendant's safety guidelines required the plaintiff to "observe and promote compliance with federal laws, general safety guidelines, and other standard safety precautions." *Hoechst-Celanese*, 967 S.W.2d at 357. The Texas Supreme Court held that such guidelines do "not impose an unqualified duty of care on [the defendant] to ensure that [the plaintiff does] nothing unsafe." *Id.* at 357–58. The Texas Supreme Court reasoned that if the imposition of safety standards were considered contractual control under Chapter 95, it "would deter employers from setting even minimal safety standards." *Id.* at 358. While this policy consideration is extremely important, the degree of control the safety program in the instant case provides far exceeds the degree of control the Texas Supreme Court considered in *Hoechst-Celanese*. Here, the document entitled "Contractor Safety Program" explicitly states that Apache retains the right to "[c]orrect any [safety] deficiencies that are observed" during its field inspections. (Defs.'s Mot. Ex. D, Ex. D, ¶ D.1.) This statement, especially when viewed in light of the evidence of Apache's involvement in the project discussed below, provides enough evidence of contractual control to survive summary judgment.[4]

C. *Actual Knowledge and Failure to Warn*

The second prong of Chapter 95 requires Plaintiff to show that Defendants had actual

---

[4]The Court notes that, even though this case is clearly distinguished from *Hoechst-Celanese*, it is still concerned with the policy consideration the Texas Supreme Court outlined in *Hoechst-Celanese*. However, the Court is convinced that the Record contains enough factual nuances to overcome this concern *at this stage in the proceedings*.

knowledge of the dangerous condition and failed to adequately warn Plaintiff. The safety meeting that occurred on the morning of the alleged accident provides enough evidence of both knowledge and failure to adequately warn to survive summary judgment. Apache's agent, Smith, conducted the meeting, and he mentioned that a cable was either removed or was going to be removed. Plaintiff and Defendants disagree as to the significance of this fact. Defendants allege that Plaintiff's admission that he knew a cable was going to be removed is an admission that he was adequately warned about the dangerous condition. Plaintiff, on the other hand, contends that Smith's statement proves that Defendants had actual knowledge of the dangerous condition. Plaintiff does not consider Smith's statement regarding a cable being removed as an adequate warning of the dangerous condition because Smith did not mention what cable was to be removed or why it was being removed. Chapter 95 explicitly requires an *adequate* warning, and whether or not the mention of a cable being removed without specifying a particular cable or its location is an adequate warning is a question of fact.

## IV. Conclusions

In sum, Plaintiff has presented enough evidence of contractual control, actual knowledge of the dangerous condition, and failure to adequately warn of the dangerous condition to survive summary judgement. Accordingly, Defendants' Motion for Summary Judgment is **DENIED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 27th day of February, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge